# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:15-cr-00082-MR

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff-Appellee, )<br>)<br>vs. )<br>)<br>)<br>BILLY JOE HURLEY, )<br>)<br>Defendant-Appellant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's appeal from the Judgment entered by the Magistrate Judge on August 13, 2015. For the reasons stated below, the Judgment is affirmed.

## I. PROCEDURAL BACKGROUND

On July 28, 2015, the Defendant was charged in a Bill of Information with one count of possession, destruction, injury, defacing, digging, and disturbing of ginseng from its natural state within the Great Smoky Mountains National Park in violation of 36 C.F.R. § 2.1(a)(1)(ii). Following a bench trial on August 12, 2015, at which the Defendant was represented by counsel, the Honorable Dennis L. Howell, United States Magistrate Judge, found the

Defendant guilty of that offense. At a sentencing hearing on August 13, 2015, the Magistrate Judge imposed a sentence of six months' imprisonment, with credit for time served. The Court did not impose a fine, special assessment, or processing fee. The Defendant filed a timely notice of appeal to this Court pursuant to Federal Rule of Criminal Procedure 58(g)(2) on August 20, 2015. [Doc. 12]. Pursuant to a Scheduling Order entered by this Court on August 21, 2015, the Defendant filed his appellate brief on September 21, 2015. [Doc. 15]. The Government filed a response brief on October 21, 2015. [Doc. 16].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

An appeal of a judgment imposed by a United States magistrate judge is reviewed by this Court using the same standards as are applied by the Court of Appeals in reviewing a district court judgment. See 18 U.S.C. § 3742(h); see also Fed. R. Crim. P. 58(g)(2)(D) ("The scope of the appeal [of a judgment entered by a magistrate judge] is the same as in an appeal to the court of appeals from a judgment entered by a district judge."). Accordingly, the Court must "assess challenges to the sufficiency of the evidence by viewing it -- including all reasonable inferences to be drawn therefrom -- in the light most favorable to the Government." United States v. Bursey, 416

F.3d 301, 306 (4th Cir. 2005). Further, the Magistrate Judge's findings of fact are reviewed for clear error, while his conclusions of law are reviewed *de novo*. Id.

### III. FACTUAL BACKGROUND

Viewed in the light most favorable to the Government, the evidence adduced at trial established the following facts.

On June 28, 2015, around 4:30 to 4:40 p.m., Great Smoky Mountains National Park Law Enforcement Ranger James Latendresse conducted a foot patrol within the Park at the tunnel on Lakeview Drive colloquially known as "The Road to Nowhere." [Trial Transcript ("Tr.") Part I at 8, 10]. The conditions were sunny and clear. [Id. at 12]. Ranger Latendresse was on the lookout for problems relating to spray paint and graffiti and for that reason he had also been on duty the previous night where he noticed that around 1:00 or 2:00 in the morning the temperature had been 59 degrees. [Id. at 11]. As Ranger Latendresse walked to the west end of the tunnel, he approached an individual he recognized as Jeffrey Hurley, who is the Defendant's brother. [Id. at 12]. Ranger Latendresse and Jeffrey Hurley stopped at the mouth of the tunnel and spoke briefly. [Id.]. The two knew each other from previous encounters. [Id.]. Ranger Latendresse noted that

there were some teenagers sitting around talking nearby and several families were walking. [Id. at 13].

During their conversation, Jeffrey Hurley offered to let Ranger Latendresse search him and his backpack, which the ranger did. [Id. at 15]. The search revealed a rain jacket, snake chaps (which are a piece of clothing worn to protect against snakebite on the lower part of the legs), and a cell phone. [Id. at 15-16]. Jeffrey Hurley did not have any camping equipment or any items relating to fishing. [Id. at 16]. Ranger Latendresse noticed that Jeffrey Hurley's hands were very dirty and that there was dirt underneath his fingernails and dirt on his knees. [Id.]. Ranger Latendresse also noticed that Jeffrey Hurley's face appeared injured, as his eyes were almost swollen shut and his face was very bruised. [Id. at 16-17].

After approximately five minutes, Ranger Latendresse noticed another individual approaching from approximately 100 yards away whom he recognized as the Defendant, Billy Joe Hurley. [Id. at 17]. Ranger Latendresse described the area where he first saw Defendant as a trail that curves to the left as one looks at it from the tunnel; a guardrail runs along the left side of the trail at the curve. [Id. at 20-21].

The Defendant walked up to where Ranger Latendresse and Jeffrey Hurley were talking and joined their conversation. [Id. at 22]. The Defendant

wore a pair of cargo pants and boots but no shirt or any other clothing. [Id.]. He was carrying two fishing poles with no tackle or hooks attached. [Id. at 22-23]. Ranger Latendresse noticed that the Defendant was very dirty with dirt underneath his fingernails and dirty knees. [Id. at 23]. Ranger Latendresse also noticed a "strong, distinct odor" coming from the Defendant. [Id.]. Ranger Latendresse had known the Defendant to poach ginseng from the Park on previous occasions and on those occasions he had noticed the same smell. [Id. at 23-24]. Ranger Latendresse also noticed on those previous occasions that the Defendant had dirty hands, dirty fingernails, and dirty knees. [Id. at 24, Tr. Part II at 10]. Ranger Latendresse has encountered the Defendant multiple times and has noticed him to be clean on some occasions, but when he has found him to be poaching ginseng, he has always been dirtier than the other times he has seen him. [Tr. Part II at 17]. The characteristic of being dirty is consistent with other ginseng poachers Ranger Latendresse has contacted. [Id. at 10]. Ranger Latendresse knew from his experience that digging ginseng is a dirty job and typically makes a person dirtier than a person would get from camping or fishing. [Tr. Part I at 24].

During their conversation, the Defendant told Ranger Latendresse that he had been "fishing and camping on Thorny Creek" which is an area to the

west of their position, still within the Park. [Id. at 25]. The Defendant stated that he had been "out there one night." [Id.]. The Defendant agreed to be searched by the Ranger and his pockets were found to be empty. The Defendant did not even have water on him. [Id.] The Defendant denied that he had taken any ginseng. [Id. at 26]. Jeffrey Hurley then stated that they needed to catch a ride and go. [Id.]. Ranger Latendresse followed them back through the tunnel where they were picked up by a silver Volkswagen. [Id.]. Ranger Latendresse called the license plate number of the Volkswagen into dispatch and learned that the vehicle was uninsured. [Id. at 26-27].

Next, Ranger Latendresse met up with his colleague Ranger Gaither and walked back through the tunnel again. [Tr. Part I at 27]. As they walked back west through the tunnel, they met a park visitor approximately half way through. [Id.]. Based on this interaction, Ranger Latendresse turned his attention to a backpack located at the point where he first observed the Defendant. [Id. at 29]. Rangers Latendresse and Gaither walked to that location and discovered a green and black North Face brand backpack just on the other side of the guardrail. [Id.]. The time was approximately 5:15 or 5:20 p.m. [Id. at 31]. Ranger Latendresse did not believe from the appearance of the leaves underneath the backpack that it had been there a long time. [Tr. Part II at 34]. Later, the visitor encountered in the tunnel

joined the rangers at the backpack location and they noticed he had bright white shoes and was not dirty. [Id. at 29]. During the time between first encountering the Hurleys and discovering the backpack, Ranger Latendresse noticed ten to twenty people in the vicinity. [Id. at 20].

The backpack was approximately thirty feet from the point where Ranger Latendresse first spotted the Defendant and would have been along the Defendant's path of travel prior to being spotted. [Tr. Part I at 32]. Ranger Latendresse noticed that the backpack was dirty and smelled like the Defendant. [Id. at 34, 35]. Ranger Latendresse opened the backpack and examined the contents finding: 1) a black T-shirt with writing and a stick figure drawing on it; 2) trash bags containing 515 ginseng roots; 3) a Gatorade bottle containing water: 4) a light insulated jacket; 5) a knife with an electrical tape handle; 6) 9 AAA batteries; 7) a carved stick that Ranger Latendresse believed could be used for digging; 8) a flashlight; 9) a white bottle full of prescription strength Motrin; 10) an M&M container full of fishing tackle; 11) some Chapstick; 12) a plastic bag containing a fresh rattle snake skin and a fresh rattle snake rattle 13) and other miscellaneous items. [Id. at 38-40]. The ginseng roots were fresh and recently dug. [Id. at 44].

Ranger Latendresse noticed that the jacket contained within the backpack was very dirty and also smelled like the Defendant. [Id. at 46].

7

The t-shirt was sleeveless and black in color with white lettering on it that said: "It's funny how you think I'm listening." [Tr. Part II at 9]. The t-shirt had a distinct odor that was consistent with the way the Defendant smelled when Ranger Latendresse noticed the Defendant's odor just a few minutes earlier that day in the tunnel. [Id. at 10]. The shirt's odor also was consistent with the odor that Ranger Latendresse had noted on previous occasions meeting the Defendant. [Id.]. Additionally, several of the items found in the backpack were items that Ranger Latendresse had noticed the Defendant possessing on other occasions when the Defendant had been discovered poaching ginseng in the park. [Id. at 11]. Those items included a digging tool, batteries, a flashlight, Chapstick, and the use of small candy containers to store things. [Id.].

Ranger James Wesley Mullins is also a law enforcement Park Ranger working in the Great Smoky Mountains National Park. [Tr. Part II at 39]. On June 23, 2015, Ranger Mullins was driving in to work in his personal vehicle when he noticed the Defendant walking along the road going towards the Park on the shoulder of the road. [Id. at 40-41, 58]. Ranger Mullins got a clear view of the Defendant and noticed him wearing a black tee shirt with cutoff sleeves with white colored print on the front, cargo pants, and carrying a dark colored medium sized backpack. [Id. at 41]. The backpack and shirt

Ranger Mullins saw Defendant wearing on June 23 were consistent with the ones found on June 28. [Id. at 42-43]. Ranger Mullins could not discern any differences or "contradictions" between the backpack and shirt worn by Defendant on June 23 and the backpack and shirt found on June 28. [Id. at 59].

On June 28, 2015, Ranger Mullins conducted a traffic stop on the Volkswagen vehicle that Ranger Latendresse had reported to dispatch. [Tr. Part II at 44]. The Defendant and Jeffrey Hurley were still in the vehicle at the time of the stop. [Id. at 44-45]. Ranger Mullins noticed that the Defendant had no shirt on and that he had dirty fingernails, hands and "kneecaps." [Id. at 46]. Ranger Mullins also noticed that the Defendant had a similar degree of dirtiness and a distinct odor about him that appeared and smelled the same as a time on June 28, 2014 that Ranger Mullins found the Defendant in possession of ginseng within the Park. [Id. at 48].

After the traffic stop, Ranger Mullins went to Ranger Latendresse's location where the backpack was located. [Tr. Part II at 51]. Ranger Mullins noticed then that the shirt and backpack looked very similar to the ones he had seen Defendant wearing on June 23. [Id. at 51-52]. He also noticed that the shirt and backpack smelled the same as Defendant did during his encounter with him in June 2014 and the way that Defendant had smelled at

the recently concluded traffic stop. [Id. at 52]. Ranger Mullins remembered that the Defendant also possessed Chapstick, a flashlight, and a digging stick when he encountered him in June of 2014. [Id. at 52-53].

## IV. DISCUSSION

On appeal, the Defendant argues that the Magistrate Judge erred in admitting evidence of the Defendant's prior encounters with law enforcement, and that the Magistrate Judge erred in denying the Defendant's Rule 29 motion to dismiss for lack of sufficient evidence.

### A. Rule 404(b) Evidence

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of a prior crime, wrong, or other act may be admissible for some other purpose, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).[1]

---

[1] Rule 404(b) also requires the Government to provide reasonable notice of the general nature of such evidence before trial or during trial if good cause can be shown for the lack of notice. Fed. R. Evid. 404(b)(2). It is undisputed in this case that the Government provided reasonable notice to the Defendant of the disputed evidence prior to trial.

The Court of Appeals for the Fourth Circuit has articulated a four-prong test to use in determining the admissibility of prior-act evidence:

> (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be "substantially outweighed" by its prejudicial nature.

United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997).  This Court reviews the Magistrate Judge's decision to admit evidence under Rule 404(b) for an abuse of discretion.  United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011).  An abuse of discretion occurs only where the "decision to admit evidence under Rule 404(b) was arbitrary and irrational." Id. (quoting United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002)).

Here, the Government introduced evidence that the Defendant had interacted with rangers several times in the past, and that in a previous encounter with rangers in 2014, the Defendant had a particular odor, had very dirty knees and hands, and carried certain items with him, such as Chapstick, batteries, and a digging tool.  The Defendant argues that evidence of such previous encounters, and particularly his appearance and odor during such encounters, was neither relevant, necessary, nor reliable. Further, the Defendant argues that the admission of such evidence "would

cause any factfinder to subordinate reason for emotion" [Doc. 15 at 6] and therefore should have been excluded under Fed. R. Evid. 403.

The Magistrate Judge did not err in admitting the proffered evidence of the Defendant's prior encounters with the park rangers. First, evidence of the Defendant's physical appearance on occasions when he had been caught poaching ginseng in the Park – particularly dirty knees and hands, dirt under his fingernails – is highly probative on the question of whether the Defendant was in fact engaged in digging (as opposed as to some other lawful activity, such as fishing or camping) on the day in question. Further, the rangers' testimony regarding the Defendant's distinctive odor, which they encountered not only in 2014 but also during their encounters with the Defendant on the trail and during the traffic stop on June 28, 2015, is relevant to establishing that the backpack found by the guardrail was in fact the Defendant's. Additionally, the testimony regarding the similarity of the items found in the backpack on June 28, 2015 to items discovered on the Defendant's person on prior occasions – a digging tool, Chapstick, candy containers used for storing items – is relevant to showing both the Defendant's ownership of the backpack as well as establishing that the Defendant was engaged in ginseng poaching on the day in question.

In addition to being relevant, this evidence was certainly necessary to help prove an element of the offense. As the Defendant notes in his motion, the Government's case consisted largely of circumstantial evidence: the Defendant was not observed actually digging or possessing ginseng on June 28, 2015. Given the circumstantial nature of the Government's case, the evidence of the Defendant's prior appearance and odor connected the Defendant to the backpack and thus was probative of the Defendant's possession of the ginseng found in the backpack. Therefore, the Magistrate Judge did not err in concluding that evidence of the Defendant's physical characteristics observed in prior encounters with law enforcement was necessary to proving an element of the Government's case.

Additionally, the prior-act evidence was reliable. The park rangers who encountered the Defendant on June 28, 2015 had a history of interactions with him. Indeed, the rangers who discovered the backpack beside the guardrail had just spoken to the Defendant minutes before by the tunnel and were able to observe the same distinctive odor emanating from the Defendant and the backpack. These rangers were available for cross-examination on what they saw, heard, and smelled that day. Additionally, the backpack and its contents were proffered to the Magistrate Judge so that he could too could smell the distinctive odor of these items. Under these

circumstances, the Magistrate Judge did not err in concluding that this evidence was sufficiently reliable as Rule 404(b) evidence.

Finally, the Magistrate Judge correctly determined that the evidence was not subject to exclusion under Rule 403. Federal Rule of Evidence 403 provides that relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This rule of exclusion, however, "is relaxed significantly in the context of a bench trial." United States v. Musleh, 106 F. App'x 850, 856-57 (4th Cir. 2004) ("Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.") (quoting Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994)).

Here, the evidence in question established nothing negative about the Defendant's *character*. The evidence of his appearance at the time of his prior crime only served to show how the criminal activity affected his appearance; it simply connected him to certain clothing, items, and odor, which was probative of his possession of the backpack and the contents

14

therein. The Defendant therefore suffered no prejudice as a result of the introduction of evidence of his appearance. Any prejudice resulting from the fact that his appearance was observed while he was committing a prior crime is minimal, and the Court is confident that Judge Howell "rejected any improper inferences and considered the evidence only to the extent that it was properly relevant." Musleh, 106 F. App'x at 857.

For all of these reasons, the Court concludes that the Magistrate Judge did not abuse his discretion in admitting evidence of the Defendant's prior acts.

### B.    Rule 29 Motion

When a defendant challenges a verdict on the basis of insufficient evidence, "the verdict will be sustained if, when the evidence is viewed in the light most favorable to the government, there is substantial evidence to support it." United States v. Sullivan, 455 F.3d 248, 260 (4th Cir. 2006). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

Here, the Defendant was charged with violating 36 C.F.R. § 2.1(a)(1)(ii), which prohibits "[p]ossessing, destroying, injuring, defacing, removing, digging, or disturbing from its natural state . . . [p]lants or the parts or products thereof." Viewing the evidence in the light most favorable to the Government, there was ample evidence presented to show that the Defendant had violated this statute. The Defendant was stopped on a trail shortly past where the backpack containing over 500 ginseng roots was found. Park rangers observed that the Defendant was extremely dirty, consistent with ginseng digging. The Defendant was not wearing a shirt and did not have any supplies with him, yet he told the rangers that he had been camping the previous night, when the temperature had dropped to 59 degrees. The Defendant was carrying a fishing pole but no tackle. His brother, Jeffrey Hurley, had a similar appearance and also lacked any camping equipment.

When the rangers discovered the backpack, they discerned that it had not been there very long, as the leaves under it were relatively undisturbed and the ginseng roots contained inside were still fresh. The rangers also discovered in the backpack a sleeveless black t-shirt, a jacket, fishing tackle, a digging tool, and other items. Ranger Mills was able to identify the sleeveless black t-shirt as being consistent with a t-shirt he had observed the

16

Defendant wearing only a few days before. Additionally, the rangers were able to discern a distinctive odor on the backpack and its contents which matched the distinctive odor of the Defendant.

Taking all of these facts and their inferences in the light most favorable to the Government, the Magistrate Judge rationally determined beyond a reasonable doubt that the Defendant violated 36 C.F.R. § 2.1(a)(1)(ii) by "[p]ossessing, destroying, injuring, defacing, removing, digging, or disturbing from its natural state" ginseng roots within the Great Smoky Mountains National Park on June 28, 2015. The Defendant's Rule 29 motion therefore was properly denied.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Judgment of the Magistrate Judge is hereby **AFFIRMED**, and the Defendant's appeal is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Defendant shall be allowed to self-report when notified by the United States Marshal.

The Clerk of Court is **DIRECTED** to provide copies of this Order to counsel for the Defendant, counsel for the Government, and the United States Marshal's Service.

**IT IS SO ORDERED.**

Signed: November 16, 2015

Martin Reidinger
United States District Judge